UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAURIE ANN SKAGGS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO.: 1:17-CV-118-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Laurie Ann Skaggs seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and erred by failing to adequately consider the combined effects of her impairments, failing to credit her lengthy work history, and overemphasizing the Plaintiff's ability to perform daily living activities.

**BACKGROUND**

On December 18, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on September 15, 2014. (R. 19.) Her claim was denied initially on January 29, 2015, and upon reconsideration on April 8, 2015. (*Id.*) On December 14, 2015, the Plaintiff appeared with counsel and testified at a video hearing before an administrative law judge (ALJ), along with her husband, Willy Skaggs. (*Id.*) Sharon D. Ringenberg, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On January

22, 2016, the ALJ denied the Plaintiff's application, finding she was not disabled as of her alleged onset date. (R. 19–30.) On October 21, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On March 24, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged onset date, September 15, 2014. (R. 21.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including best vetilloform macular dystrophy, hypertensive retinopathy, and neovascularization with loss of visual acuity. (*Id.*) The ALJ found

that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and that the impairments had lasted for at least twelve months as required under the statute. (*Id.*) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including diabetes mellitus, hypertension, hypercholesterolemia, history of left knee tear/repair, history of heel spurs, psoriasis, degenerative disc disease of the lumbar and thoracic spine, and obesity, were not severe impairments. (R. 21.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform:

> a full range of work at all exertional levels, but she is further limited to activity requiring no more than frequent near acuity, frequent far acuity, frequent depth perception, frequent accommodation, and frequent field of vision, and she should avoid all exposure to unprotected heights, hazardous machinery and commercial driving secondary to vision loss.

(R. 24.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 27.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id*.) The Plaintiff testified that after working for the same employer for seventeen years, she quit her job to assist her husband in his home office. (R. 24.) She soon learned, however, that she was unable to do what she needed to do without using a magnifying glass. (*Id.*) As a result, she could assist her husband for only an hour or two a week, and he had to double check all of her work. (*Id.*) The Plaintiff testified that she first noticed problems with her vision over two years before her hearing before the ALJ. (R. 25.) She also testified that she "limits herself driving around town and driving to the grocery store (*e.g*. less than five miles) when the traffic is not busy" due to her visual impairments. (*Id.*) The Plaintiff acknowledged that she could use her cellphone and could see well enough to do her hair and makeup, with a magnified mirror. (R. 24–26.) The Plaintiff also stated that certain medication she took resulted in many trips to the bathroom in the mornings. (R. 26.) The ALJ acknowledged the Plaintiff's complaints about her psoriasis—which she often needed to treat with ointment, which needed time to "soak in"— and stiffness following her knee surgery— which made it difficult to sit for long periods of time. (R. 22, 68–69.)

The ALJ then turned to the objective medical evidence. The ALJ gave significant weight to state agency physicians regarding whether the Plaintiff's vision condition supported Listing-level severity. (R. 27.) The ALJ also afforded greater weight to the state agency opinions than to

4

the Plaintiff's testimony regarding whether her visual limitations nevertheless resulted in total disability. (R. 28.)

The ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence, and was not consistent with the Plaintiff's ability to maintain her employment prior to quitting for the purpose of assisting her husband. Thus, the ALJ discounted the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of her symptoms, finding the Plaintiff not credible. (R. 24–27.)

The Plaintiff has past relevant work as a hand packager (unskilled, medium exertion) and an awning assembler (skilled, medium exertion). (R. 28.) The VE indicated that the "the claimant's job as a hand packager does not require performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*) Thus, the ALJ concluded that the Plaintiff was capable of performing past relevant work. (R. 29.) Alternatively, relying on the VE's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant also can perform." (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 30.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if

the Plaintiff's testimony regarding whether her visual limitations nevertheless resulted in total disability. (R. 28.)

The ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence, and was not consistent with the Plaintiff's ability to maintain her employment prior to quitting for the purpose of assisting her husband. Thus, the ALJ discounted the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of her symptoms, finding the Plaintiff not credible. (R. 24–27.)

The Plaintiff has past relevant work as a hand packager (unskilled, medium exertion) and an awning assembler (skilled, medium exertion). (R. 28.) The VE indicated that the "the claimant's job as a hand packager does not require performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*) Thus, the ALJ concluded that the Plaintiff was capable of performing past relevant work. (R. 29.) Alternatively, relying on the VE's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant also can perform." (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 30.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if

substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

The Plaintiff's first assignment of error faults the ALJ for failing to consider all of the Plaintiff's impairments in determining the Plaintiff's RFC. The Plaintiff's remaining two assignments of error fault the ALJ's credibility determination because the ALJ failed to credit her lengthy work history and overemphasized her daily living activities.

**A.   Non-Severe Impairments**

The Plaintiff argues that the ALJ erred by failing to consider the combined effects of all of her impairments, including her non-severe impairments, in determining her RFC. When an ALJ determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly . . . the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling.").

"A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of

impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether"); *Verlee v. Astrue*, No. 1:12-CV-45, 2013 WL 1760810, at *5 (N.D. Ind. Apr. 24, 2013) (remanding where "ALJ failed to discuss, and effectively ignored, the Plaintiff's" non-severe impairments when determining the Plaintiff's RFC). "Although the non-severe impairments may not have an effect on the claimant's RFC ultimately, the ALJ [is] required to explain why." *Denton*, 596 F.3d at 423.

At step two of the ALJ's analysis, the ALJ discussed the Plaintiff's non-severe impairments, such as her diabetes mellitus, psoriasis, obesity, a history of left knee tear and repair, a history of heel spurs, and degenerative disc disease of the lumbar and thoracic spine. (R. 21–22.) The ALJ concluded that, in combination, these impairments did not rise to the level of "severe" within the meaning of the Social Security Act. (R. 22.) While this may have been sufficient for step two, the ALJ failed to adequately consider the combined impact of these impairments for the purposes of step four. For example, the ALJ dismissed the Plaintiff's psoriasis and the side effects of one of the Plaintiff's medications solely because the Plaintiff had continued to work. (R. 26.) The ALJ also did not mention the Plaintiff's obesity during this part of the analysis.

The ALJ's opinion seems to demonstrate a fundamental misunderstanding of step four. Regarding a side effect of another medication, the ALJ stated that the evidence did not support a side effect "sustaining as severe for 12-months despite treatment." Whether the side effect is "severe" within the meaning of the Social Security Act is not the question at this stage. An ALJ is specifically required to consider a claimant's non-severe impairments in conjunction with her severe impairments when determining her RFC. Thus, to the extent that the ALJ failed to fully

8

consider the Plaintiff's non-severe impairments in determining the Plaintiff's RFC, the Court must remand this case.

**B.     Credibility**

"An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft v. Astrue*, 539 F.3d at 678); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.") The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. "[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska*, 454 F.3d at 738).

In this case, the ALJ discounted the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of her symptoms because (1) it was not consistent with the objective medical evidence, (2) the Plaintiff continued to work for a substantial amount of time after her alleged onset date, and (3) the Plaintiff continued to work for her husband for one to two hours a week. The Commissioner argues that the ALJ properly considered the Plaintiff's continued employment in her prior position because she testified that the reason she quit was to

9

help her husband, not due to her impairments. The Commissioner also argues that the ALJ properly considered the Plaintiff's work history by acknowledging that the Plaintiff had worked for the same company for seventeen years. As to the Plaintiff's daily living activities, the Commissioner argues that the ALJ appropriately weighed them and did not place undue emphasis on the fact that the Plaintiff continues to assist her husband.

"There is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). "An ALJ is not statutorily required to consider a claimant's work history, but a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (internal quotation omitted). "The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic." *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995); *see also Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) (finding argument "would be correct were there a logical incompatibility between working full time and being disabled from working full time"); *Ghiselli*, 837 F.3d at 778 ("Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition."). A positive work history makes a claimant *more* credible, and a desire to resume work similarly makes a claimant more credible, not less." *Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) (internal citations omitted).

In this case, "[t]he ALJ relies upon the faulty premise that if impairments and/or pain were present for years and years and it did not keep Plaintiff from working then, it would not keep [her] from working now," *Springer v. Colvin*, No. 1:13-CV-185, 2014 WL 3075342, at *7

10

(N.D. Ind. July 2, 2014). The fact that the Plaintiff continued to work despite her alleged limitations seems to have weighed heavily against the Plaintiff in the ALJ's determination. (*See* R. 22–28.) But, "[a] disabled person should not be punished for heroic efforts to work . . . ." *Hawkins*, 326 F.3d at 918; *see also Luttrell v. Berryhill*, No. 1:17-cv-2192, 2018 WL 558541, at *4 (S.D. Ind. Jan. 25, 2018 (A plaintiff "should not [be] discredited for attempting to work despite her physical limitations."). Thus, the Court finds that the ALJ inappropriately held the Plaintiff's continued employment against her instead of weighing it in her favor.

In examining the Plaintiff's daily living activities, the ALJ mentioned that the Plaintiff was able to drive short distances, use a cellphone, do her own hair and makeup, watch television, and assist her husband with his work. (R. 25–26.) An individual's daily activities are among the factors that an ALJ must consider in determining a claimant's RFC. *See Craft*, 539 F.3d at 660. But, the Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

It appears that the ALJ placed the greatest weight on the fact that the Plaintiff was capable of assisting her husband with his work for one to two hours a week. But, the fact that the Plaintiff can assist her husband for an hour or two a week in no way suggests that the Plaintiff is capable of full-time employment despite her impairments. *See Callahan v. Colvin*, No. 15 C 5892, 2016 WL 6092633, at *7 (N.D. Ill. Oct. 19, 2016) ("but being able to work means being able to hold down a 40-hour a week, full-time job, not being able to dust a few days a month"). Her husband had to check everything she did to ensure that she did not make any mistakes. (R.

11

27.) He continued to let her "work" because she needed something to do, not because she was productive. (*Id*.) *See Callahan*, 2016 WL 6092633, at *7 ("In this case, Claimant didn't work full time, or barely even part time; she just worked a day here and there over the winter," and "she was working for a friend who adjusted her duties according to her limitations."). Thus, there are "critical differences" between the Plaintiff's daily living activities and her ability to maintain full-time employment, and the ALJ's determination on this point cannot be said to be supported by substantial evidence.

Accordingly, to the extent that the ALJ based her credibility determination on the Plaintiff's work history and the assistance she provides to her husband, the Court must remand this case.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on February 16, 2018.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT